UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD SANDERS, 143350,

                              Petitioner,              Case Number 4:12-cv-15122
                                                       Honorable Gershwin A. Drain

STEVE RIVARD,

                              Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING
PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS**

This matter is before the Court on Petitioner Richard Sanders' petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. In February 1986, following a jury trial in the Wayne Circuit Court, Petitioner was found guilty of first-degree murder, conspiracy to commit first-degree murder, and possession of a firearm during the commission of a felony. In March 1986, he was sentenced to concurrent terms of life imprisonment for the conspiracy and murder convictions, and to a consecutive two-year term on the felony firearm conviction. The petition claims that: (1) the statute for conspiracy to commit murder as applied to Petitioner violated the Second Amendment under *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010), where Petitioner simply gathered with family members for the purpose of self-defense; (2) *McDonald* applies retroactively to Petitioner's case. The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal in forma pauperis.

## I. Facts and Procedural History

The Michigan Court of Appeals summarized the prosecutor's theory at Petitioner's trial as follows:

> It was the prosecutor's theory of the case that the defendants planned to kill a member of the victim's family in retaliation for their intervention in a neighborhood dispute. Shortly thereafter, Richard Sanders participated in an ambush and either shot the victim to death or aided and abetted in the shooting.

*People v. Sanders*, No. 92369 (Mich. Ct. App. Sept. 25, 1990).

Multiple witnesses testified at trial regarding the dispute Petitioner and some of his family members had with the victim's family, and to the various threats and violent acts that led to the fatal shooting to support the prosecutor's theory of the case. Essentially, these witnesses testified that Petitioner and another family member, situated on the second floor of his sister's apartment, shot at the victim's car as it stopped across the street at the victim's apartment.

Petitioner testified in his own defense at trial, and contrary to the narrative given by the prosecution's witnesses, he claimed that he did not fire the fatal shot and that his actions were performed in self-defense or in the defense of his family members.

Petitioner testified that on the day of the shooting, August 16, 1985, as he was driving home from work he was stopped by Frank and Mark Dyer who warned him, "I'm tired of your people fucking with my people and I'm going to kill everybody in your family." Tr. V. at 91-95.

Petitioner testified that when he arrived home his wife told him about confrontations they had with the victim's family during the day. Another family member arrived at Petitioner's house and told him that Frank Dyer had just shot up his car. The two men then

-2-

went to buy ammunition at a store. Later, Petitioner's sister arrived and told him that Frank Dyer had shot up her house and tried to kill her. Petitioner and two family members then drove to his sister's house, which was located across the street from the Dyer. Petitioner testified that he decided take a position in an upstairs bedroom with his rifle to stand guard.

Petitioner testified that he later heard a car pull up to the Dyer house, and he saw Frank Dyer. After words were exchanged, Petitioner testified that Dyer fired shots at the upstairs window towards Petitioner. Petitioner testified that his brother returned fire, but that he did not as his gun had jammed. In the exchange of fire, Mark Dyer, who was sitting in the passenger seat of a car parked in front of the Dyer house, was shot and killed.

The jury obviously chose to accept the testimony of the prosecution witnesses, rejected his defense, and convicted Petitioner as indicated above.

In May 1986, Petitioner filed an appeal of right with the Michigan Court of Appeals. On September 25, 1990, the Michigan Court of Appeals issued a per curiam opinion affirming but remanding for modification of his judgment of sentence, consistent with the court's opinion. *People v. Sanders*, No. 92369 (Mich. Ct. App. Sept. 25, 1990). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. On February 20, 1991, the Michigan Supreme Court denied Petitioner's application.

On April 22, 2003, Petitioner returned to the trial court and filed a motion for relief from judgment, which the trial court denied on January 7, 2004. *People v. Sanders*, No. 85-5904, Order (Wayne County Cir. Ct. Jan. 7, 2004). Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. On December 22, 2004, the Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under Mich. Ct. R. 6.508(D). *People v. Sanders*, No. 256762, Order

(Mich. Ct. App. Dec. 22, 2004). On November 29, 2005, the Michigan Supreme Court denied the application for leave to appeal. *People v. Sanders*, 474 Mich. 931 (2005) (unpublished table decision).

In January 2007, Sanders filed another motion for relief from judgment with the trial court. On June 20, 2007, the trial court denied the motion. *People v. Sanders*, No. 85-005904, Order (Wayne County Cir. Ct. June 20, 2007). Petitioner then filed a delayed application for leave to appeal in the Michigan Court of Appeals, which was dismissed on December 27, 2007. *People v. Sanders*, No. 282440, Order (Mich. Ct. App. Dec. 27, 2007). The Michigan Supreme Court then denied Petitioner's application for leave to appeal on June 23, 2008. *People v. Sanders*, 481 Mich. 912 (2008) (unpublished table decision).

In October 2011, Petitioner filed his third and most recent motion for relief from judgment, raising what now form his habeas claims. The trial court denied this motion on February 8, 2012. *People v. Sanders*, No. 85-005904-01-FH, Order (Wayne County Cir. Ct. Feb. 8, 2012). Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, which was dismissed on April 6, 2012. *People v. Sanders*, No. 308814, Order (Mich. Ct. App. April 6, 2012). The Michigan Supreme Court denied Petitioner's application for leave to appeal to that court on October 22, 2012. *People v. Sanders*, 493 Mich. 868 (2012) (unpublished table decision).

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

Petitioner asserts that his Second Amendment rights were violated because he was merely exercising his right to bear arms in his home to defend himself. In support of this position, Petitioner relies on *McDonald v. Chicago,* 130 S.Ct. 3020 (2010). Respondent asserts that the petition was untimely filed, that the claims are procedurally defaulted, and that they are without substantive merit.

While the procedural default doctrine and the statute of limitations may preclude habeas relief, they are not jurisdictional barriers to considering substantive habeas claims. See *Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while procedural issues should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); see also, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walters v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). Here, Petitioner's claims are utterly devoid of merit, and it is therefore more efficient to address them directly.

The Second Amendment to the United States Constitution provides: "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held the Second Amendment protects an individual right "to possess and carry weapons in case of confrontation," unconnected with service in a militia.

-7-

The court struck down a District of Columbia law effectively banning the possession of handguns in the home. *Id*. at pp. 628–632.

More recently, in *McDonald*, the Court held the Second Amendment right recognized in *Heller* is "fully applicable to the States."130 S.Ct. at 3026. A plurality of the *McDonald* court concluded the Second Amendment right applies to the states because it is "fundamental" to the American "scheme of ordered liberty" and is therefore incorporated in the due process clause of the Fourteenth Amendment. 130 S.Ct. at 3036, 3050. In a concurring opinion, Justice Thomas  agreed with the plurality's characterization of the Second Amendment right as "fundamental." 130 S.Ct. at  3059.

Although it struck down the District of Columbia handguns ban, *Heller* recognized and affirmed certain traditional limitations on the right to bear arms. As the court noted, the Second Amendment does not grant "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, supra, 554 U.S. at 626.  *Heller* identified an expressly nonexclusive list of "presumptively lawful regulatory measures," stating "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id*. at 626–627 and fn. 26; accord, *McDonald*, supra, 130 S.Ct. at 3047.  In so doing, *Heller* recognized that some individuals, presumably including felons and the mentally ill, may be "disqualified" from exercising Second Amendment rights. *Heller*, at pp. 626–627, 635.

Petitioner contends that his conviction violates the Second Amendment's guarantee of the right to keep and bear arms for self-defense. Obviously, however, the Supreme

Court has never held that the Second Amendment justifies murder or conspiracy to commit murder, or that it creates a broader standard for self-defense then provided by state law. Petitioner fails to cite any case law for this proposition. "Like most rights, the Second Amendment right is not unlimited. It is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 570. For this reason, federal district courts have rejected similar habeas challenges on Second Amendment grounds. *Gieryk v. Ochoa*, 2010 U.S. Dist. LEXIS 134748, 2010 WL 5373857, at *1 (C.D. Cal. Nov. 2, 2010); *Saldinger v. Santa Cruz Cnty. Super. Ct.*, 2010 U.S. Dist. LEXIS 94347, 2010 WL 3339512, at *4 (N.D. Cal. Aug. 24, 2010).

Perhaps more to the point, even assuming the Second Amendment creates some sort of constitutional foundation for advancing a self-defense theory, Petitioner presented such a defense at trial. He testified to his version of the events, the trial court instructed the jury on self-defense, but the jury rejected it. Accordingly, Petitioner has not demonstrated entitlement to habeas relief on his claims.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this

standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37.  The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims.  The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

### V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.


S/Gershwin A. Drain
United States District Court Judge

Dated:  June 30, 2014


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 30, 2014, by electronic and/or ordinary mail.

S/Julie Owens acting in the absence of Tanya Bankston
Case Manager

-10-